Our next case on the docket is 5-24-0481 Sawyer v. Sawyer, Sean Park and Sidney Jackson. I forgot to say at the outset of the last case, but when you begin, please, for the recording purposes, please state your name when you begin your argument. Are you ready? I am ready. Are you ready? Yeah. All right. You may proceed. Thank you. For the police and the court, I'm Sean Park, representing Sean Sawyer in this matter. This was a divorce that happened in Coles County, Illinois. One of the factors here is Sean Sawyer and his former wife had gotten a divorce, but they were in bankruptcy. Sean and Tony had subsequently gotten married. As a result, or after the marriage, Mr. Sawyer was able to pay off or pay towards the properties, the real estate, for the bankruptcy trustee to release them. He obtained his former wife's quick claim deed for her half of the interest in the property after they were married. But this was clearly property acquired prior to the marriage, and the question becomes was how the money was received by the bankruptcy trustee, was that a gift or a loan? Tony Sawyer alleges and asserts that it was a loan, but what do we have there? We have no terms, no demand for payment, no interest rate, nothing. If it was a loan, they set forth no details of anything to make this a loan. Okay, so let me interrupt you there, though. Doesn't the case law support, though, that it is the donative intent, and didn't Ms. Sawyer testify as to the intent? She did, but she did not set forth those agreements. You know, when was repayment to be made? When was it to, you know, what interest rate? How were the payments to be made? You know, it's easy to get up a couple of years after, and you're going through a divorce and say, no, I didn't mean to give it to you, it was a loan. There is nothing that documented that, supported that, and she had made no demand for payment. And I think here we do have evidence of a donative intent in that she wrote the check, it was received by the bankruptcy trustee. But she wrote it directly to the trustee, is that correct? Directly to the trustee. And as a result, Mr. Sawyer received the property. So he received the gift. Mr. Sawyer claims it was a gift, and so we have a dispute. So we have to look at the other factors, you know, what goes into a loan? What are the nature and terms of it? So I would suggest that that payment to the bankruptcy trustee was a gift and not a loan, because they didn't. Do you have case law to support that it is the terms that is crucial in the analysis? I do not. I do not have that for you. You know, so we also then go to the issue, if it was a loan, they're also claiming that the property was acquired after the marriage from the bankruptcy, when it was released from the bankruptcy estate, even though Sean and his former wife had had the property. So I don't think you can have it both ways. You can't have it be marital property and a gift. It has to be one or the other. So, you know, because the property was clearly acquired before Sean and Tony got married. It was just tied up in the bankruptcy estate. So I think the court erred in considering some of these properties marital property and not separate property. And, yes, I'm aware the court can fashion an award to take into account various factors of contribution and so forth. And while the court cannot order the separate property to be given, they can order the other person to be compensated. You said a couple of times that the property was acquired before the marriage, but actually the deed was issued during the marriage. The deed was issued from, it was Sean and his former wife's property. And he was awarded that in his prior divorce. But it got tied up in this bankruptcy. And in order to get it out of the bankruptcy, after, you know, he was married to Tony, the bankruptcy trustee, in light of the payment, released the property back, and Sean's former wife then deeded her interest. And so that's where we're at. But even if you trace that as non-marital property to marital property, didn't the court in their trial order, in their order, determine that the property was basically worthless? It had been subject to the bankruptcy. It had a negative value, in fact, because there were checks totaling $29,500. So even if you trace it as non-marital property to marital property, it had zero net worth at the time. Is that correct? I wouldn't say that. I mean, because this is a short-term marriage, and I think that gets into the issue, again, of Tony giving the opinions as to value. I don't think there was any value established as to what the value was at the time they were received from the former Mrs. Sawyer. So it's a—and I think that leads us into our next issue, which is having Tony Sawyer allowing her over-objection to testify as to the value of these properties. And I think one of the keys here is this—you know, by the court denying or not sustaining the objection, Mrs. Sawyer testified that she went and talked to various people and obtained this information from a realtor. She looked on Zillow and other things and other documents. She, by rendering her opinion testimony, is in effect giving an opinion testimony of the realtor that she talked to, and the realtor was not brought in. I think the review of the objection, I think, is de novo, because either the objection should have been sustained and Mrs. Sawyer should not have been allowed to testify as to the value of the property, and because she didn't have enough knowledge as to what the value of the property was, just because she may have been an owner. The case is, yes, a layperson can give an opinion as to the value of a property they own, but certain factors have to be set forth and done. Here, she got the value of the property by talking to a realtor friend, and essentially, I would suggest to the court, restated what that value was that she was told by the realtor. Why else would she go consult a realtor to figure out the value of the property if she already knew? If you're going to challenge the value of the property, though, isn't it incumbent on Mr. Sawyer to provide a counter value? I mean, he did not present any evidence of value. I don't know that it's incumbent upon him because the house is able to determine value if you object to her testimony and you don't present any to yourself. How is the court to determine value then? Well, I think at that point, Mr. Sawyer may have had an option to, you know, if the objections were sustained, which I feel they should have, they could have potentially submitted values of the property. I wasn't trial counsel. I don't know what occurred there, but what we have is a value of the property, yes, but we have to remember one thing. It's Tony Sawyer's burden of proof on this. She is the petitioner. But again, in absence of any other evidence, how does the court make that decision? Well, I don't think the court can. The court at that point, I think, has to either send them back and say, we've got to reset this hearing. I don't have any information where I can make a value, or dismiss the petition and they start over again. There is no value of, you know, it's their burden. Mr. Sawyer doesn't have to prove the value of the property. It was the petitioner's responsibility for that. So I would suggest to the court that the court erred, number one, in determining it was a loan and not a gift, number two, that these properties acquired after the marriage but through the bankruptcy estate are separate property, and three, erred in admitting Ms. Sawyer's opinion testimony as to the value and using that to make its determination in the case. The court simply, and it could have been as simple as, you know, just sustaining the objection, and then maybe they go bring the realtor in to give an opinion, a qualified opinion. But to have her tell us what the value of these things are with little, if any, foundation as to how she obtained the value, and we know that one of her sources was obtained from hearsay and essentially put before the court as hearsay, which I think was properly objected to. We would ask your honors to reverse and remand this case for further proceedings in the trial court to establish the value of the property and to establish a proper division of the property. Thank you. Thank you. Good morning, and may it please the court. I'm Sydney Jackson. I represent the appellee, Tony Sawyer. As counsel stated, there are three central issues on appeal today. Whether it was against the manifest way of the evidence for the trial court to find that Tony's payments to the bankruptcy trustee were a loan and not a gift, whether the trial court abused its discretion in classifying certain properties as marital property, and whether proper foundation was laid for Tony to give her lay opinion testimony about the values of the properties. First, regarding the payments to the bankruptcy trustee, a valid gift requires donated intent and delivery of the subject matter, but here there was neither. Tony testified about her conversation with Sean regarding this loan. She said that they agreed that she would make the payments to Jennifer's bankruptcy trustee and that he would repay her by depositing those funds back into her account. She even testified about what she planned to do with those funds when Sean repaid her. She said she would put that money toward her retirement. And second, there was no delivery of the subject matter. Tony made all of the payments directly to the bankruptcy trustee. She identified the checks and was able to provide them to the trial court. She never made any of these payments to Sean, only to the trustee. The next issue is whether the court abused its discretion in categorizing certain properties as marital property. Before you move on from the loan issue or the gift issue, there were no terms about interest. Was there any interest to be charged for those payments? No. Was there any date when the repayment was to start? No. Why was the payment made in three different payments instead of one lump sum payment of $29,000, $29,500? I believe those were just the funds that Tony had available to her at the time when the payments were made. I don't think she had the full $29,500 available to make one lump sum payment. Was there any testimony about the terms changing with each payment? I mean, since there were no terms listed. No. So it was the same agreement for all three payments, even though they were different amounts? Well, the general agreement is just that she would make the payments to the bankruptcy trustee. There really were no additional terms about when the payments would be made or if there were interest, there would be interest. Thank you. Yes. The next issue is whether the court abused its discretion in categorizing certain properties as marital property. First, regarding the marital residence, it was clear from the party's conduct that they intended for this property to be treated as marital property. Sean acquired this property via quitclaim deed from his first wife during the party's marriage. Tony then made significant financial and physical contributions to the property. She contributed financially by paying the bankruptcy trustee so that Sean could keep the property. She made regular mortgage payments on the property for over three years, which included escrow for taxes and insurance, and she also paid for improvements to the property. She testified that she purchased new countertops and cabinets for the home, and she incurred about $20,000 in debt on a Home Depot gift card to purchase materials to make these improvements. But not only did she pay for the improvements, she testified that she spent more than 100 hours exerting physical labor to make these improvements to the property. She worked to convert the garage into an office space by laying new flooring, installing trim, drywall, insulation, floor joists, lighting, cabinets, countertops, and shelving. She also worked to make improvements to a bedroom on the property by removing old carpeting, painting, repairing drywall, and installing trim and closet shelving. And as the trial court pointed out, there was no net value to the parties, or this property had no net value to the parties at the time they were married. It wasn't until after they were married and Tony made these significant contributions that this property had any value to the parties. And next I'd like to address the other properties that Sean was able to keep as a result of Tony's payments to the bankruptcy trustee. This includes 407 Main Street, 305 Fifth Street, the lot pen ending in 002, which is known as the semi-lot, and the two parcels in Fayette County. As we said, all of these properties were acquired during the party's marriage when Jennifer Quick claimed her interest to Sean. It's important to note that like the marital residence, none of these properties had any net value to the parties at the time they were married. It wasn't until after the marriage that they realized any equity in all of these properties. Specifically for 407 Main Street and 305 Fifth Street, the parties obtained mortgages on both of these properties and used marital funds to pay on the mortgages. And last, the properties at 408 College Street, 409 Main Street, and the lot pen ending in 000, all of these properties were purchased by the parties during the marriage. They had no relation to Jennifer or her bankruptcy, and it's undisputed that these properties are marital properties subject to division. Counsel, what about the issue of evaluation based on Tony's testimony? Can you address that? Is there a specific property or? Well, as to the specific property, but she did give testimony as to what she believed was the value of various properties, correct? Yes. All right. And the appellant is arguing that that was improper. What is your position as to that? So the circumstances are different for each property, so I think it's important to address each of them individually. I did say in my brief that under American National Bank versus North Chicago, the owner of a property is qualified to express an opinion of its value so long as that owner is familiar with the facts that give rise to the property's value. And under Rose v. Mercedes-Benz, any witness who is familiar with the property and has knowledge of the values of nearby real estate is competent to testify about the value of that property. So for the marital residence, this would fall under Rose v. Mercedes-Benz. Her testimony showed that she's very familiar with the property and all the improvements that were made, and she testified that informing her opinion as to the value of this property, she looked on Zillow and looked at nearby properties to see how that would compare to the marital residence. For 408 College Street, her ownership of the property qualifies her to testify about its value under the American National Bank case. She also testified about her familiarity with the property and testified that informing her opinion about the value of the property, she considered that the purchase price was $16,000. She reviewed an appraisal that the previous owners had done, and she consulted with a realtor to form her opinion. Similar is 409 Main Street. Once again, her ownership of the property qualifies her to testify about its value under American National. She also testified about her personal knowledge of the property and how familiar she is with the property and that informing her opinion of its value, she knew that the purchase price was $20,000. The parties had an appraisal done when they purchased the property, and she, again, consulted with the realtor about the value of this property. I'm not sure I disagree with you, but I'm also not sure that looking on the Internet and getting something and talking to another realtor and getting information and reading someone else's appraisal, that seems like three different hearsay determinations coming in and her adopting them as her own. I don't think you can just say, well, that's my opinion, too, because I got hearsay information from someplace else. Sure. And Tony isn't asserting that these other sources are entirely accurate with the value. This is just her testimony of how she formed her own opinion of the value. These are the resources that she relied on in forming her own opinion. But she's not holding herself as an expert. She's a layperson, so I'm not sure. That's correct. For 407 Main Street, Tony testified about her personal knowledge of the property and that in forming her opinion as to its value, she looked at the tax assessor's website to see past purchase prices, and she reviewed Sean's interrogatory responses about the loan amount for this property. For 305 Fifth Street, she based her opinion on the value of this property, based her opinion of the value of this property on the loan amount, and Sean's interrogatory responses. For the semi-lot, she again looked at the tax assessor's website to see the past purchase prices, and she knew that Sean and Jennifer had purchased this lot for $10,000. And last, for the 2 Fayette County parcels, she based her opinion on Sean's interrogatory response regarding the purchase price of this property. It is important to note that the only evidence that the court had available as to the value of the properties was Tony's testimony. Sean didn't provide any evidence about his opinion of the values of the properties. Ultimately, given the foregoing, it was not against the manifest weight of the evidence for the trial court to find that Tony's payments to the bankruptcy trustee were a loan and not a gift. The court did not abuse its discretion in classifying these properties as marital properties subject to division, and proper foundation was laid for Tony to give her lay opinion testimony as to the value of these properties. Therefore, my client asks that this court affirm the determination of the trial court. Thank you all for your time. Mr. Parker, if I may? Yes, I'll be very brief, Your Honors. I think what we have to remember here is, I think, just as you pointed out, in going into her opinions, we've got information supplied by a tax assessor, information supplied by a realtor, information from looking online at Zillow. We have to remember this house is in a very small, and I would classify it maybe as a poor community, of Illinois. It's not very big. There's not many houses. Most of the houses are old. What is there? You know, she didn't, you know, you can look at a sales listing, but the sales listing doesn't have, which is what Zillow gives you, is what the property is advertised for. But that has maybe nothing to do with the sales price that may ultimately come out of listing that transaction. So here, you know, if we go back and look at the record, when she was first asked, her response was essentially, well, I consulted a realtor and the realtor told me this objection. Then they went into some other things. So she was prepared to give her opinion testimony based upon information supplied to her by the realtor. Here, I just suggest that the court did not have enough information in which to establish the values and put these in there, that this matter has to be sent back and reminded for further hearing as to the value of these properties. I also suggest that because we, you know, if somebody makes a loan to you, you're going to want to know when you're getting your money back, how you're getting your money back, or are you going to give me an interest in the property? You know, what's the loan? If she's getting property, most people, when they loan money on a property, take out a mortgage. You know, something to show her interest and her intent. As I said, it's easy to come in after the marriage, after this gift, in a time period of lapse, and say, no, it wasn't, I didn't intend it as a gift, I intended it as a loan. And I realize she did say that. But there was nothing on how to get her money back, how to do this, and I don't think that the court had sufficient information to say that this was a loan instead of a gift. What is our standard of review on determinate evaluations? Ms. Jackson mentioned two differences. She said the court's determination was not of use of discretion, and then she also said the evidence presented or the court's finding is not against the manifest way of the evidence. And I heard Justice Steinman say one time from the Fourth District, there are only two standards, either discretionary or de novo, and I'm not sure where the line is between abuse of discretion and manifest way, but what standard are we talking about? Here's what I would suggest to the court. As to the objections that were put forth as to totally testifying as to the value of these property, and it was a continuing objection, that has to be ruled as a matter of law de novo. Did the court make the proper ruling on the objection? If the court didn't make the proper ruling on the objection, then her evaluation of these things should not have came in at all. So I think we have to look at that issue there. If your honors rule that it was the court properly held denied the objection and allowed her to testify, then I think it goes to an abuse of discretion in terms of distribution. So I think that's the key. But if we, I think the trial court erred in allowing Ms. Sawyer to give this testimony over a proper and repeated objection. Thank you. Thank you. Other questions of Justice King, Justice Shulman? All right, thank you. Thank you. We appreciate your arguments. We'll consider the arguments you made in your briefs and also the oral arguments today. We will take the matter under advisement and issue a decision in due course.